Sadler v. Anderson.

For a stronger case of intendment see Prewitt v. Farris, 5 Tex. R. 370. See expressions of Court on the main point 376. If these positions be correct, the plea presents Dunbar as a nominal plaintiff, suing as the agent of P. U. Ford & Co. (Holliman v. Rogers, 4 Tex. R. 91 ; Fowler v. Willis, 4 Id. 46 ; Thompson v. Cartwright, 1 Id. 87.)

WILLIAM SADLER v. ROBERT G. ANDERSON, GUARDIAN.

See this case as to the necessity of proving the law of another State, where the rights of parties depend on transactions occurring there.

A bill of sale under execution by a Sheriff in another State, will be presumed to conform to the laws of such other State, until the contrary appears.

It would seem to be no objection to the validity of a bill of sale under execution, where all the facts are proved, that it contained no recitals showing by virtue of what execution the sale was made.

It seems that when the law of another State, in which the transactions occurred, are not alleged and proved, the law of such other State will be presumed to be the same as our own, at least so far as our laws are founded in common right.

A bill of exceptions should state facts so as to exclude any reasonable conclusion of fact from those stated, upon which the decision could be sustained.

Where a bill of exceptions merely showed that the plaintiff had offered in evidence the deposition of a witness taken in another cause between the same

parties, the Court said, It is not shown by the bill of exceptions, the statement of facts, nor any other part of the record, that the witness was either dead, or beyond the jurisdiction of the Court even, which must be shown before such evidence can be received.

Where property levied on is claimed by a third person, who gives bond to try the right thereto, and the claimant establishes his right to the principal part of the property, but fails as to some items, it would seem not to follow that the plaintiff in execution would be entitled to recover the costs of the suit ; but that they might be apportioned by the Court.

See this case as to the statute of limitations in favor of persons holding under a conveyance in fraud of creditors, where such conveyance is to minor children.

Appeal from Nacogdoches.  Tried below before the Hon. Archibald W. O. Hicks.

Execution, August 25th, 1852, in favor of the appellant against Robert G. Anderson, Jr., on a judgment of the District Court of Nacogdoches county, rendered May 5th, 1843, in a suit commenced in September, 1842 ; levied on eight slaves, to wit : Henry, a man ; Dave, a man ; Jane, a woman ; Mary, a woman ; Huldy, a girl ; Mahala, a girl ; Allen, a boy ; Angelina, a girl ; and two sorrel mules, and eleven hundred acres of land ; all of said slaves, except Henry and Huldy, claimed by Robert G. Anderson, Jr.,* as the guardian of his minor children, William R. Anderson, Emily L. Anderson and Miranda L. Anderson, and bond given for the trial of the right of property.  The burden of proof was on the claimant.

Claimant introduced a witness who testified that he knew Samuel Hamblin in 1840—1841 ; that he was Sheriff of Madison county in the State of Mississippi ; that the signature of said Hamblin to the bill of sale to Robert G. Anderson, Sen., was genuine ; on cross-examination, stated that it was not common to witness such bills of sale in Mississippi at that time ; that the signature of the Sheriff was evidently done with

* This designation is preserved for obvious reasons, although the Robert G. Anderson, Sen., was deceased before 1852.

Sadler v. Anderson.

different ink from that of the only witness to the same (Robert G. Anderson, Jr.;) that the witness' signature looked much more recent than the original, though he was not well enough acquainted with writing to say that they were not executed at the same time; his own opinion would be that they were not.

The claimant then offered in evidence the said bill of sale, and the plaintiff objected to its admission on the grounds stated in the Opinion. Objections overruled and bill of sale read in evidence. The bill of sale will be found on page 252. It was proved by Robert G. Anderson, Jr., as a subscribing witness, before the Clerk of the County Court of Nacogdoches county, and left for record on same day, November 20th, 1852.

The claimant then proved and read in evidence a deed of gift, dated March 28th, 1840, from Robert G. Anderson, Sen., to the claimant's wards, donor's grandchildren, of the slaves, David, Alfred, Jane and Mary; also a barouche and two sorrel mules, two beds and furniture. The deed of gift was proved by Robert G. Anderson, Jr., one of the subscribing witnesses, before the Clerk of the County Court of Nacogdoches county, and left for record July 4th, 1841.

The claimant removed to Texas in 1840 or 1841, with his family and said slaves; he stated, and it became notorious, that the slaves belonged to his children (the claimant's wards;) the slaves in controversy are the same mentioned in the deed of gift, and their children; in December, 1844, the claimant obtained letters of guardianship for said minors; inventory and appraisement of the slaves as their property; regular accounts and settlements, from year to year, in which the minors were charged with their board, clothing, &c., and credited with the hire of the slaves; accounts nearly balanced.

The deposition of a witness for claimant, in answer to the preliminary interrogatory, which required him to state what was the object of the suit, stated, among other matters, that only one of the mules belonged to the gift to the children;

that it was a big kneed mule called Jim, worth sixty dollars ; but this witness also stated that he did not know the property until after the removal to Texas ; value of the slaves proved.

Witness for claimant testified, on cross-examination, that Robert G. Anderson, Sen., left Mississippi to reside in Texas, in 1840 or 1841, on account of pecuniary embarrassments ; that he had heard Robert G. Anderson, Jr., say that what property was there, (meaning the property in his possession,) was fixed in such a way that his creditors could not get at it ; that the father and son came to Texas at the same time, in 1840 or 1841.

Alfred, one of the slaves mentioned in the deed of gift, died in 1850.

As rebutting testimony, plaintiff read the deposition of Samuel Hamblin, except the answer to the seventh interrogatory, which was excluded without note of any exception. Knew the Andersons, Senior and Junior, in Mississippi, from first part of 1839 until they went to Texas, which I think was sometime in the year 1840 ; as Sheriff of Madison county, Mississippi, I sold on the 20th January, 1840, for the sum of three thousand dollars, to Robert G. Anderson, Sen., six negroes, viz : David, Alfred, Mary, Rose, Angelina and Jane. They were sold as the property of Robert G. Anderson, Jr., under executions in my hands against him. Afterwards, and before the sale was completed, Robert G. Anderson, Sen., let one Henry Hayman have the above named negress, Angelina, at his bid, to wit : five hundred dollars, and Hayman paid me for her. As Sheriff as aforesaid, I sold on 24th February, 1840, to John Moore, a negro girl named Nancy, under executions against said R. G. Anderson Jr., for six hundred dollars. On the 2nd March, 1840, I sold to Wesley Drane for nine hundred dollars, a negro man named Bob, as the property of said R. G. Anderson, Jr., under executions in my hands against him. I also sold under said executions on said 2nd March, 1840, to sundry persons divers mules, corn, fodder, one

wagon, smith and plantation tools and sundry other articles of minor importance, as the property of said Anderson, Jr. The amount sales of these chattels was, exclusive of the negroes above mentioned, sixteen hundred and twenty-seven dollars and sixty cents. Robert G. Anderson did not purchase any property, other than that mentioned herein before specifically as having been bid off by him.

I sold the property mentioned above, by virtue of four writs of execution. [Here the witness described the executions, and referred to copies thereof in a deposition of his in another case in said Nacogdoches District Court.] The whole amount of said executions, including interest and all costs, was three thousand two hundred and forty-seven dollars and seventy-three cents ; the whole property sold under said executions amounted to five thousand six hundred and twenty-seven dollars and sixty cents. I do not know who paid in money for property purchased at said sales, and who did not ; all I know is, that enough was paid in to satisfy said executions ; if any thing more was paid in, I have now no knowledge of it. The answer to the seventh interrogatory was as follows :

I have no record of any advertisement of said property ; and, so far I know, I kept a record in all cases where sales of property were advertised. I have no knowledge of the property of R. G. Anderson, Jr., having ever been advertised. I do not believe it ever was. The sale was principally conducted by my deputy, Mr. Jesse Brown, who was on good terms with R. G. Anderson, Sen., and R. G. Anderson, Jr., and a near neighbor to them.

In answer to the eighth interrogatory, witness said, I know very little of the pecuniary circumstances of R. G. Anderson, Sen., or R. G. Anderson, Jr., at the time. Robert G. Anderson, Jr., was then embarrassed ; soon after the sale, they left for Texas.

The executions referred to in the deposition of Hamblin were then read in evidence without objection. The plaintiff

then gave in evidence the record of the suit in which the judgment on which the execution was issued, was rendered ; and it appeared therefrom that the judgment was founded on the note of R. G. Anderson, Jr., payable to the plaintiff, dated January 9th, 1840, due March 1st, 1841.

The contents of the deposition of Judith Anderson were not stated, nor was it stated when the suit referred to in the bill of exceptions as heretofore pending, was commenced. The Opinion contains a full statement of the bill of exceptions on this point.

The charge of the Court was very full ; but no point being made upon it, it is omitted. The plaintiff asked the Court to charge the jury as follows :

That if they are satisfied from the evidence, that the deed from the Sheriff in Mississippi was not recorded in Mississippi, and there was no delivery accompanying said sale from the Sheriff, Robert G. Anderson, Sen., acquired no title, and his deed to the claimants conferred no title.—(Signature of counsel.) Refused.—(Signature of Judge.)

If the jury are satisfied that R. G. Anderson, Sen., paid the Sheriff no money and the sale went to satisfy no execution, and if they believe that the executions which were in his hands were satisfied by other sales, the deed of the Sheriff conveyed no title ; provided plaintiff's debt was then in existence.— (Signature of counsel.)

The Judge is asked to charge the jury that to create the debt of Sadler, under the charge given, it need not be due ; it is sufficient if it was in existence.—(Signature of counsel.) Given.—(Signature of Judge.)

The counsel for appellants, in his brief, did not notice the assignment of error as to the refusal of instructions asked ; from which we infer that the second and third instructions asked were both given ; and such would be the legal intendment of the record in this case, although it might have been

otherwise, if the claimant had been appellant, and assigned for error the giving of the second paragraph or instruction.

Verdict and judgment for the claimant. Motion for a new trial overruled. The motion took the general ground that the verdict was contrary to the evidence. It also specified the defect of proof as to the one mule.

*R. S. Walker* and *Moore,* for appellant.

*J. M. Ardrey,* for appellee.

LIPSCOMB, J. This was a suit to try the right of property levied on by an execution in favor of the appellant, against R. G. Anderson, and claimed by him as guardian of his minor children. There was a trial ; verdict and judgment for the claimant ; a motion for a new trial overruled, and the plaintiff in the execution appealed. He has assigned the following grounds of error :

1st. The Court erred in refusing to give to the jury the charge asked by the plaintiff Sadler.

2nd. The Court erred in allowing the defendant Anderson to read to the jury the deed from Hamblin, (Sheriff in Mississippi,) for the negroes in controversy.

3rd. The Court erred in excluding the deposition of Mrs. Judith Anderson, in a previous suit.

4th. The Court erred in excluding the 7th interrogatory to witness Hamblin.

5th. The Court erred in refusing to grant a new trial.

On the first assignment, we believe that the Court below might well refuse to give the charge asked, on account of its structure. It assumes that if there was no record of the deed of the Sheriff in Mississippi to Anderson, Sen., the grantor to the minors, that an actual delivery by the Sheriff was necessary ; asking a charge of a legal conclusion, without the slightest evidence or proof that such was required by the laws of Mis-

sissippi, on which the conclusion could be drawn. In the absence of such proof, the deed was proof of delivery; and even if the Judge could be required to give the charge, as asked, it is believed to have been substantially given in that part of his charge, that if the transaction between Anderson, Sen. and his son, the guardian of the claimants of the property, was only simulative of a real transaction, intended to deceive and defraud the creditors of the latter, it would be void, or language to that effect.

The next objection, taken by appellant, is to the reading in evidence, by the defendant, of the Sheriff's deed. As this is a most material part of the evidence in support of the right of the claimants of the property, in this case, we will insert it here :

$2500. Received of Robert G. Anderson, Sen., two thousand five hundred dollars, in full, for five negro slaves, called David, Alfred, Mary, Rose and Jane, sold by me, at Sheriff's sale, this day, as the property of Robert G. Anderson, Jr., to satisfy sundry executions to me directed ; and I hereby bargain, sell and convey unto the said Robert G. Anderson, Sen., all the right, title, interest and claim of said Robert G. Anderson, Jr., in and to the aforesaid negro slaves. In testimony whereof I have hereunto set my hand and seal the 2nd day of March, 1840. (Signed) Samuel Hamblin, Sheriff. (L. S.) Test, R. G. Anderson, Jr.

To the reading of this deed or bill of sale, to the jury, the appellant made the following objections, which were overruled ; to which appellant excepted : " That the said bill of sale, " purporting to be signed by a Sheriff, does not contain the " necessary recitals to constitute a valid sale by a Sheriff; it " sets forth no particular execution authorizing said sale ; be- " cause there is no identity established between the negroes " conveyed by said bill of sale, and the negroes involved in " this suit ; because the execution and delivery of said deed " have not been properly proven."

There was no evidence showing that by the laws of Mississippi, any particular form of a Sheriff's bill of sale was required, or what were the requisite constituents thereof, to make it a bill of sale ; and, *prima facie*, it was made in conformity with the laws of the State. As to what such a deed should contain, there will be found a great diversity in the laws of the different States, each regulating it as it is thought best. The question was fully discussed by this Court in the case of Howard and Wife v. North, 5 Tex. R. 311, and after exhausting the whole subject of the regularity of a Sheriff's sale, and his deed, on the latter, (the deed,) and in reference to our own statute, it is said : " The statute directs the Sher- " iff, after sale has been made and the terms complied with, to " execute and deliver a conveyance to the purchaser ; but does " not prescribe the facts that shall be stated in the deed, or " that the authority under which the Sheriff acted shall be " recited. The recital in the deed is not made by statute, nor " is it, on general principles of law, a substantial and effectual " part of it ; nor is it evidence of the facts recited in it, ex- " cept between the immediate parties to it."

It is believed that the case cited fully answers the two first objections taken by the appellant. The third is, that it does not show the identity of the property conveyed by the Sheriff's deed, and the property in controversy. This objection was certainly hastily and inconsiderately made by the eminent counsel, because that could not be made an objection to the reading of the deed. The identity of the property therein conveyed, with that in controversy, was a matter to be established subsequently by proof. If the party claiming under the deed failed to show its identity, he certainly could not hold the property under it. It was, however, abundantly proven that it was the same property, and the issue thereof, described in the Sheriff's deed.

The last objection is, that the execution and delivery of the deed have not been properly proven. It may here be again

said, that it is not shown that the laws of Mississippi required any particular kind of proof of the execution and delivery of the Sheriff's deed to the purchaser, nor that any witness to such deed was necessary to its validity. There was, however, to this deed a subscribing witness, the defendant in the plaintiff's execution, and the guardian of the minors claiming the property ; and he was, perhaps, in the position he now occupies, incompetent to prove the execution. At any rate there was no such ground taken in the Court below, that it must be proven by the subscribing witness. His handwriting was proved fully and satisfactorily, and so it was proved that the deed and signature to it was in the handwriting of Hamblin, and that he was the Sheriff of Madison county in Mississippi at the date of his deed. Under such circumstances it appears to us, that the deed was proven to have been executed by the best evidence the nature of the case admitted of. An effort was made to prove that the witness' name to the deed was not subscribed at the time the deed purported to have been executed, but the evidence failed to establish that fact. The only evidence was that of a witness, who proved the handwriting both of the subscribing witness and of the Sheriff. He said that the signature of the witness seemed to have been written with different ink from the deed and signature of the Sheriff. It might have been done at a different time, and at the request of the Sheriff ; or at the same time, with different ink. But even if it had been put there without authority, and without his having witnessed the execution, it is not perceived how it could have affected prejudicially the rights of his wards, as the deed would have been valid without any subscribing witness.

There is nothing in the objection, that it was not proved that the deed was actually delivered by the Sheriff. Its being in the possession of the parties claiming under it is sufficient evidence of delivery. This possession had been of long continuance. It was executed in March, 1840, and this trial was

in 1854. The deed from R. G. Anderson, Sen., was made soon after this deed, and was recorded in the same year or the year after in the county of Nacogdoches, into which county the minors and the property had been removed.

The next question is, did the Court below err in refusing to allow the evidence of Mrs. Judith Anderson, taken in another suit, to be read by the plaintiff on the trial in this case? The question is presented by a bill of exceptions ; and the subject matter of the suit, in which the evidence was taken by interrogatories, is very imperfectly shown. It is presented as follows : " The plaintiff offered to read in evidence the interro- " gatories and answers of Judith Anderson, which were taken " and filed in a certain cause, heretofore pending in this Court, " wherein Ann P. Anderson, wife of Robert G. Anderson, " was plaintiff, together with Shadrack Buley, as next friend of " William R. Anderson, Emily L. Anderson and Miranda L. " Anderson, children of Rob't G. Anderson, Jr., were plaintiffs, " and William Sadler, the plaintiff in this action, was defendant; " the object of said suit being to enjoin the levy and sale of the " negroes and mules now at issue in this suit, as claimed by said " Buley to belong to said minors ; other property being claimed " by said Ann P. Anderson, not embraced in this suit ; the said " execution prayed to be enjoined, being an execution issued " from the District Court of said County of Nacogdoches upon " the same judgment by virtue of which the execution in the " present case was issued. The Court refused to permit the " said deposition to be read, for the reason that Rob't G. An- " derson, Jr., was not a party to said suit, and that the minors " are not bound thereby." The Court below, in giving the reason for excluding the evidence offered, was no doubt influenced by the consideration, that as the minors had a legally consti- tuted guardian, he was the person to represent their interest and rights, and that their rights could not be affected by a volunteer in their behalf. If this was the fact, it seems the ground of objection assigned by the Court was correct. The

evidence showed that since 1844 these minors had a legally constituted guardian, and the party offering the evidence, not showing the time when this claim was set up for them by the person assuming to be the next friend, the presumption from these circumstances is, that it was after the appointment by the Court of Probate, of a guardian for them.   The bill of exceptions should have shown when that suit by injunction was filed, and enough to have shown that the same title, now claimed under, was set up in that.

But, apart from the reason assigned by the Court for its judgment, there seems to have been another decisive reason why the evidence ought not to have been received.   It is no shown by the bill of exceptions, the statement of facts, nor by any part of the record, that Judith Anderson was either dead, or beyond the jurisdiction of the Court even, which must be shown before such evidence could be received.

The next ground of error urged by the appellants is, the excluding from the jury, the answer of Hamblin to the plaintiffs' seventh interrogatory.   It is a sufficient answer to this objection, that the ruling of the Court was not excepted to at the time, and cannot be objected to now.   But if it had been received, it could not have been material, as it went to the question, whether the property sold by him to Robert G. Anderson, Sen., embraced and described in the witness' bill of sale to him, had been advertised or not.   He says he does not recollect whether it had been or not.   It will be seen by reference to the case cited, of Howard and wife v. North, 5 Tex. R. 309, that it was not material to the rights of the purchaser. It is said by the Court, after commenting on several cases in support of the conclusion about to be enumerated and particularly one, 10 Smedes and Marshall, p. 246, that " These " cases are sufficient to show, that it may be regarded as a " settled rule, that a defective notice or want of publication of " the sale of property under execution, will not vitiate the ti- " tle of the purchase."

Sadler v. Anderson.

The last error assigned is, that the Court erred in overruling the plaintiffs' motion for a new trial, on the ground that the verdict was contrary to the evidence. The specification, under the assignment relied on in the motion, was that the evidence does not support the verdict in this, that the verdict includes all of the property claimed, when there is no evidence that the mules belonged to the claimants. Two mules were mentioned in the deed under which the claimants derived title, and two mules were levied on by virtue of the execution. at the same time the slaves were levied on. The claim is for the property levied on. The two mules were appraised together by the Sheriff, at one hundred dollars. The verdict is general, finding for the claimants. The attention of the Court and jury appears not to have been directed to the mules at all during the progress of the trial, until the motion for a new trial was entered, excepting that one witness in the course of his examination, stated that but one of the mules was in the gift, alluding no doubt to the deed from Robert G. Anderson, Sen., to the claimants ; that it was a mule with a big knee, called Jim, worth sixty dollars. He gave no particular description of the other mule. If his valuation corresponded with the valuation of the Sheriff, it leaves the valuation of the other at forty dollars, a very small sum when compared with the value of the negroes levied on ; and the verdict as to them is fully supported by the evidence, and we believe sufficiently sustained as to the mule described by the witness.

The plaintiff contends that the sum, small as it is, would have entitled him to a judgment for that amount, which would have carried cost. If the whole cost is intended, the proposition may well be questioned. Now if the plaintiff has levied his execution on the property of the claimants, not subject to the execution, of the value of twenty-six hundred and sixty dollars, and on one mule, subject to his execution, worth forty dollars, bearing a proportion of about one sixty-sixth to the property, that he had no right to seize under his execution.

it is not reasonable that he should recover the full cost.— It would be contrary to common sense and justice. All that he in justice could demand, would be cost in proportion to the property found subject to execution. The property being composed of several distinct parts, the claimants ought to have cost for the property found to belong to them, that had been illegally seized by the plaintiff. But we are of opinion that the Court below, in view of the facts noticed above, that so large an amount had been seized when so small a portion was subject to the execution, and this the result of a mere oversight, might well have concluded that the jury, by the verdict, had not gone beyond the justice of the case, and refused to set aside the verdict. And if so, we are unwilling and do not feel authorized to disturb his decision, from anything that appears from the record. The case was put to the jury fully and fairly, calling to their attention every supposeable badge of fraud, in the way usual with Judge Hicks, the presiding Judge, who is always careful and minute in his charges to the jury, so that they may be fully informed of the facts before them ; and we affirm the judgment.

Judgment affirmed.